IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCES FENNIMORE, individually
and on behalf of others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A.,
NATIONSTAR MORTGAGE, LLC, and
JOHN DOES 1-10,

Defendants.

CIVIL ACTION
NO. 14-06883

PAPPERT, J.                                     NOVEMBER 12, 2015

<u>MEMORANDUM</u>

Plaintiff Francis Fennimore ("Fennimore") sued her mortgage servicers, Bank of

America, N.A. ("BOA") and Nationstar Mortgage, LLC ("Nationstar") (collectively

"Defendants"), seeking to compel BOA and/or Nationstar to offer her a permanent mortgage

modification agreement that she contends she is owed.  Fennimore further alleges that BOA

and/or Nationstar have deprived other Pennsylvania mortgagors of similar modification

agreements.  BOA and Nationstar move to dismiss Fennimore's amended complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motions are

granted in part and denied in part.

**I.**

In October of 2006, Fennimore refinanced her home located in Philadelphia,

Pennsylvania, with Countrywide Bank, N.A. ("Countrywide").  (Plaintiff's Amended Complaint

("Am. Compl.") ¶ 24, ECF No. 24.)  Countrywide presented Fennimore with both a primary and

secondary mortgage loan.  (*Id*. ¶ 25.)  The secondary loan, the only loan at issue in this case, had

a principal balance of $17,280.00.  (*Id*. ¶ 26; *Id*. at Ex. A.)  Additionally, the loan contained a

"balloon" fifteen year payment with a 9% interest rate.  (*Id*.)  Fennimore's monthly payment was

$139.04, and her balloon payment was due October 1, 2012.  (*Id*. ¶ 27.)

Fennimore's loan was transferred to Bank of New York on May 14, 2011, at which time

BOA began servicing her loan.  (*Id*. ¶ 28.)  In 2012, Fennimore fell behind on both her primary

and secondary loans.  (*Id*. ¶ 31.)  She secured a modification for her primary loan sometime in

2012.  (*Id*. ¶ 34.)  BOA instructed Fennimore to stop making payments on her secondary loan

until the modification of her primary loan was complete.  (*Id*. ¶ 33.)

Fennimore received a letter from BOA dated August 8, 2013, that provided information

"regarding a modification program for which [she] may be eligible" relating to her secondary

loan ("August 2013 Letter").  (*Id*. ¶ 36; *Id*. at Ex. C.)  The program was designed to "bring [her]

account current by adding all unpaid amounts to [her] principal balance."  (*Id*. at Ex. C.)  The

August 2013 Letter stated that "[t]o qualify for a modification of your account…you must

complete a three month trial period.  If you complete the trial period successfully we will offer

you a modification of your Loan."  (*Id*.)  More specifically, the August 2013 Letter stated:

> "You will receive a permanent modification of your account if you: a) pay each of
> the monthly trial period payments on time and in full, and b) sign and return the
> final Modification Agreement which will be sent to you once you have completed
> making your required trial payments.  Until you receive your final Modification
> Agreement in the mail, you should continue to make your monthly home equity
> payments in the amount of your trial period payments."

(*Id*.)  Attached to the August 2013 Letter was her Trial Period Plan ("TPP").  (*Id*.)  The TPP

reiterated that "[i]f you complete the trial period successfully we will offer you a modification of

your Loan." (*Id.*)  The monthly trial period payments were due on October 1, 2013, November 1, 2013, and December 1, 2013.  (*Id.*)  The amount per month was set at $209.64.  (*Id.*)  To remain eligible, Fennimore had to pay on or before the thirtieth day after the due date.  (*Id.*)  The TPP further stated:

> "This is an estimate of what your initial monthly payment will be if you complete your trial period and enter into a permanent modification agreement (your 'Modification Agreement').  Depending on the specific terms of your Modification Agreement, your monthly payment amount will not necessarily stay the same throughout the life of your loan, but could adjust to one or more payment amounts that could be higher than your initial monthly payment amount. The exact terms will be spelled out in your Modification Agreement."

(*Id.*)  The TPP stated that after all requirements were satisfied, "the Bank will contact you and will forward your Modification Agreement to you.  You must continue making your monthly trial payments until your receive your Modification Agreement.  Once you receive your Modification Agreement, you must return it within 30 days or the modification offer will terminate."  (*Id.*)  The TPP further specified: "your Original Loan Documents remain in effect; however, you may make the Trial Payment instead of the payment required under your Original Loan Documents."  (*Id.*)  After completing the payments, BOA would "determine the new payment amount and the remaining final terms of your Modification Agreement.  This Modification Agreement will modify your Original Loan Documents to reflect your new payment amount and other terms."   (*Id.*)

Finally, the TPP included a provision regarding Fennimore's credit score during the trial period.  Specifically, the TPP warned:

> "Your credit score may be affected by accepting a trial period plan or modification…You understand that as long as you remain delinquent under the terms of your Original Loan Documents, we will continue to report your Loan as delinquent to credit reporting agencies during the Trial Period even if you make

your Trial Payments on time.  However, after your Loan is modified under a
permanent Modification Agreement, we will only report the Loan as delinquent if
we do not receive the modified payments under the Modification Agreement in a
timely manner…After your loan is modified under a Modification Agreement, we
will report your loan as modified under a modification agreement."

(*Id.*)  Fennimore alleges her TPP was not issued pursuant to the federal Home Affordable

Modification Program ("HAMP"),[1] and Defendants do not contest that fact.  (*Id.* ¶ 43.)

Additionally, unlike HAMP TPP's, Fennimore's TPP did not provide grounds for denial of a

loan modification after the successful completion of the trial period.  (*Id.* ¶ 44.)  On September 5,

2013, October 7, 2013, and November 1, 2013, Fennimore submitted payments of $210.00 to

BOA pursuant to the TPP.  (*Id.* ¶ 56.)  She alleges that her final payment represented her full

performance under the TPP.  (*Id.* ¶¶ 56, 62.)

    In late October 2013, Fennimore received notice from BOA that her secondary loan

would be assigned to Nationstar on November 16, 2013.  (*Id.* ¶ 59; *Id.* at Ex. D.)  The letter

("Assignment Letter") stated that "If you are currently being considered for a loan modification

or other foreclosure avoidance program, your new servicer Nationstar Mortgage LLC is aware of

your current status and will have all of your documents.  Please contact Nationstar Mortgage

LLC to complete the process and determine which programs may best suit your current

---

[1]     In February 2009, the Secretary of the Treasury and the Director of the Federal Housing Finance Agency
announced the Making Home Affordable program ("MHA").  The MHA was created in an effort to curb the
negative effects of the foreclosure crisis.  HAMP was created as part of the MHA.  Under HAMP, people who are
struggling to pay their mortgages can apply for a permanent loan modification.  If a borrower applies for a
modification, loan servicers are required under the HAMP regulations to determine whether the borrower is eligible.
Servicers base this determination on financial information submitted by the borrower.  If the borrower is qualified,
the modification reduces their monthly payment to 31% of their gross monthly income.  *See generally Cave v. Saxon
Mortgage Servs.*, Inc., No. CIV.A. 11-4586, 2012 WL 1957588, at *1 (E.D. Pa. May 30, 2012).
    Trial Period Plans under HAMP state that "the Lender will send the borrower a permanent modification
agreement if: 1) the borrower's representations of their financial state continue to be true; 2) the borrower complies
with the terms of the temporary payment plan; 3) the borrower provides all required documentation; and 4) the
Lender determines that the borrower qualifies."  *Id.*  The HAMP TPP requires the borrower to make three reduced
monthly payments.  Additionally, the HAMP TPP states that if the borrower qualifies, the servicer will provide the
borrower with a modification.  If the borrower is not qualified, the servicer will send a written denial.  *Id.*

situation." (*Id*. at Ex. D.) The Assignment Letter further explained that "[t]he loan assistance programs that are offered by Nationstar Mortgage LLC are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, Nationstar Mortgage LLC has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A." (*Id*.) The Assignment Letter stated that BOA "will transfer any supporting documents you may have submitted" to Nationstar, and encouraged Fennimore "to work with Nationstar Mortgage LLC to complete the process and determine which programs may best suit your current situation." (*Id*.) Finally, the Assignment Letter stated that "If your loan was awaiting a decision regarding qualification for these programs, that decision will now be made by Nationstar Mortgage LLC." (*Id*.)

At the time of the assignment to Nationstar, Fennimore's loan remained in default. (*Id*. ¶ 64.) After receiving the Assignment Letter, Fennimore "attempted to communicate with Nationstar regarding a permanent modification of her second loan." (*Id*. ¶ 71.) Neither BOA nor Nationstar sent Fennimore a permanent modification agreement. (*Id*. ¶¶ 62–63, 72, 90.)

Nationstar subsequently sent Fennimore three Act 91 Notices, which are a mandatory prerequisite in Pennsylvania for initiating foreclosure on a residential mortgage. (*Id*. ¶ 73; *Id*. at Ex.'s E–G.) Fennimore was never informed as to why Nationstar initiated foreclosure proceedings rather than send her a permanent modification agreement. (*Id*. ¶ 79.) Nationstar sent the Act 91 Notices on December 27, 2013, January 15, 2014, and January 16, 2014, each reflecting a different monthly payment that Fennimore had missed. (*Id*. ¶ 73; *Id*. at Ex.'s E–G.) Additionally, the Notices assessed $434.97 in late fees. (*Id*. at Ex.'s E–G.) However, the principal balance due under the Notices decreased from first to last. The first Notice had a balance of $8,810.68. (*Id*. at Ex. E.) The last Notice had a balance of $8,739.72. (*Id*. at Ex. G.)

Fennimore sent monthly payments of $210.00 to Nationstar through September 2014. (*Id*. ¶ 86.)  Nationstar placed these payments "in suspense" and applied them toward Fennimore's earliest defaulted amounts, keeping Fennimore in perpetual default.  (*Id*. ¶ 87.) Fennimore has thus been unable to re-finance her loans with a different lender.  (*Id*. ¶ 88.)

Fennimore received a letter from Nationstar dated October 30, 2014 ("October 2014 Letter").  The October 2014 Letter informed her that Nationstar was unable to grant her request for "Loss Mitigation Options."  (*Id*. ¶ 91; *Id*. at Ex. H.)  The October 2014 Letter further stated that HAMP Tier I and Tier II modifications were "not available" and the standard (non-HAMP) modification was declined because either the investor, insurer, or guarantor of her mortgage did not approve the modification.  (*Id*. at Ex. H.)  Fennimore alleges that the "uncertainty surrounding" the permanent loan modification "coupled with [her] receipt of the Act 91 Notices" has caused her "severe emotional distress."  (*Id*. ¶ 112.)  She further alleges that these events required her to take medication, and caused her to suffer loss of sleep, anxiety, and panic.  (*Id*.)

Fennimore filed this putative class action lawsuit on December 4, 2014.  (ECF No. 1.) Defendants moved to dismiss the initial complaint.  (ECF Nos. 12, 21.)  Fennimore filed an amended complaint on March 6, 2015.  (ECF No. 24.)  Fennimore's amended complaint alleges: (1) breach of contract, breach of good faith and fair dealing and promissory estoppel against both Defendants (Counts I and II); separate breach of contract, breach of good faith and fair dealing and promissory estoppel claims against only Nationstar (Counts IV and V); (2) unjust enrichment against Nationstar (Count III); and (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*., against Nationstar (Count VII).[2]  Defendants filed

---

[2]     Fennimore also alleged a violation of the Equal Credit Opportunity Act ("ECOA") against Nationstar. Fennimore has since voluntarily dismissed this claim.  (Pl.'s Resp. Opp. Defs.' Mot. Dis. at 1, ECF No. 30.)

their motions to dismiss the amended complaint.  (ECF Nos. 26, 27.)  Fennimore filed an

"omnibus response" in opposition to Defendants' motions (ECF No. 30.), and Defendants filed

their respective replies.  (ECF Nos. 31, 32.)  The Court heard oral argument on Defendants'

motions on September 3, 2015.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual

allegations sufficient "to raise a right to relief above the speculative level…on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The complaint "must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678.

(quotation and citation omitted).  Speculative and conclusory statements are not enough.  "[A]

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions…a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

Furthermore, the court must construe the complaint in the light most favorable to the

plaintiff.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)).  However, while

all allegations contained in the complaint must be accepted as true, the court need not give

credence to mere "legal conclusions" couched as facts.  *Iqbal*, 556 U.S. at 678.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements do not

suffice."  *Id.*

Finally, a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

## III.

Before reaching the substance of Fennimore's claims, the Court must address two issues: (1) whether Fennimore can simultaneously allege breach of contract and promissory estoppel as alternative theories of liability; and (2) whether Fennimore has sufficiently alleged alternative theories for *who* could be liable under those two claims.[3]

Fennimore alleges claims for breach of contract and promissory estoppel against both Defendants (Counts I and II). Defendants argue that Fennimore must allege one or the other, but cannot pursue both. Defendants' argument is incorrect at the 12(b)(6) stage. A plaintiff can allege alternative theories of liability as long as they "plead facts that support the alternative pleading." *Bengal Converting Servs., Inc. v. Dual Printing, Inc.*, No. CIV.A. 11-6375, 2012 WL 831965, at *4 (E.D. Pa. Mar. 13, 2012). "[U]ltimately, the broad federal pleading possibilities allow the [plaintiff] to plead both causes of action as alternative theories of liability." *Orthovita, Inc. v. Erbe*, No. CIV.A. 07-2395, 2008 WL 423446, at *7 (E.D. Pa. Feb. 14, 2008). This allows the plaintiff to "use the discovery process to aid in classifying…its claims." *My Space Preschool*

---

[3]     This analysis only applies to Counts I and II of Fennimore's Amended Complaint as she has brought those claims against both Defendants. Counts I and II relate to Defendants' alleged failure to offer Fennimore a modification agreement, or otherwise permanently modify her loan. Fennimore also alleges separate breach of contract and promissory estoppel claims solely against Nationstar (Counts IV and V). These Counts relate to Nationstar's alleged improper initiation of foreclosure proceedings in violation of the TPP, and will be addressed in the Court's breach and promissory estoppel analyses. *See infra*, Parts V and VI.

*& Nursery, Inc. v. Capitol Indem. Corp.*, No. CIV.A. 14-2826, 2015 WL 1185959, at *8 (E.D.

Pa. Mar. 13, 2015).  Fennimore can therefore allege claims for both breach of contract and

promissory estoppel; whether she has sufficiently done so is of course a separate question.

Fennimore's allegations in Counts I and II with respect to each Defendant are the same.

Fennimore alleges that on November 16, 2013, BOA transferred its rights and obligations to

Nationstar, including its obligations under the TPP.  (Am. Compl. ¶¶ 30, 60, 66–70; Ex. D.)

Additionally, she alleges that her final payment on November 1, 2013 represented her full

performance under the TPP.  (*Id*. ¶¶ 56, 62.)  Fennimore therefore argues alternative theories for

which Defendant is allegedly liable based on when the TPP (or promise thereunder) was

allegedly breached.

In support of her contention that either Defendant could be liable for claims of breach of

contract or promissory estoppel, Fennimore points to the Assignment Letter.  The Assignment

Letter unambiguously states that

> "If you are currently being considered for a loan modification or other foreclosure
> avoidance program, your new servicer Nationstar Mortgage LLC is aware of your
> current status and will have all of your documents.  Please contact Nationstar
> Mortgage LLC to complete the process and determine which programs may best
> suit your current situation."

(*Id*. at Ex. D.)  It goes on to say that "[w]here applicable, Nationstar Mortgage LLC has agreed to

evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A."  (*Id*.)

Finally, the Assignment Letter made it clear that BOA "will transfer any supporting documents

you may have submitted" to Nationstar, and that "[i]f your loan was awaiting a decision

regarding qualification for these programs, that decision will now be made by Nationstar

Mortgage LLC."  (*Id*.)  Fennimore alleges that she "attempted to communicate with Nationstar"

after receiving the Assignment Letter, but received no agreement.  (*Id*. ¶ 71.)

At the 12(b)(6) stage, Fennimore's allegations sufficiently implicate potential liability for either BOA or Nationstar.  Fennimore's claims against BOA arise after she made her final payment on November 1, 2013, but before BOA transferred her loan to Nationstar on November 16, 2013.  Fennimore's claims against Nationstar arise after the rights and obligations under the TPP were allegedly transferred on November 16, 2013.  The issue of when liability (if any) arose is a factual determination not properly decided at the 12(b)(6) stage.  Inasmuch as Fennimore sufficiently alleges alternative theories of liability, the Court's analysis of her breach of contract and promissory estoppel claims will apply equally to both Defendants.

## IV.

Fennimore contends that the TPP was a contract obligating Defendants to either:  (1) permanently modify her loan; or (2) offer her a permanent loan modification agreement which she could accept or deny.[4]  Defendants contend that the TPP is not a contract.  Specifically, Defendants argue: (1) the TPP is an unsigned writing that violates the Statute of Frauds ("SOF"); (2) there was no offer or acceptance; (3) the essential terms were indefinite; and (4) there was no consideration.[5]

Before Fennimore can allege breach of contract, she must first sufficiently allege the existence of an enforceable contract.  In Pennsylvania, an enforceable contract exists if: (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was consideration.  *ATACS Corp. v. Trans*

---

[4]    Fennimore's complaint is not precise about whether her breach of contract claim is premised on Defendants' failure to permanently modify her loan (Am. Compl. ¶¶ 45, 46, 50, 70, 72.), or failure to offer her a permanent modification agreement.  (Am. Compl. ¶¶ 61, 62, 90, 150.)  Reading the allegations in the complaint "in the light most favorable" to Fennimore, the Court finds that Fennimore alleges alternative theories of what obligations arose from the alleged contract.

[5]    Nationstar's motion—in all material respects—adopts BOA's arguments relating to Fennimore's breach of contract and promissory estoppel claims premised on Defendants' failure to offer a modification agreement.

*World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998); *see also Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956); *Linnet v. Hitchcock*, 471 A.2d 537, 540 (Pa. Super. Ct. 1984).  Additionally, the Pennsylvania Statute of Frauds requires any contract modifying a mortgage to be in writing.  *U.S. Bank Nat. Ass'n v. JGKM Associates LLC*, No. CIV.A. 12-4550, 2015 WL 1474448, at *5 (E.D. Pa. Mar. 31, 2015) (referencing 33 Pa. Cons. Stat. Ann. § 1).  Contracts can be either bilateral or unilateral.  "A unilateral contract is a contract wherein one party makes a[n]…offer which calls for the other party to accept by rendering…performance."  *Caucci v. Prison Health Servs., Inc.*, 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001).  For the reasons that follow, the Court finds that Fennimore has sufficiently alleged the existence of a contract.

## A.  Mutual Manifestation of Intent – Offer and Acceptance

### i.  Offer

Mutual intent to be bound by the agreement ordinarily manifests as "an offer or proposal by one party followed by an acceptance by the other party."  *Bayliss-Allen v. Cadence Design Sys., Inc.*, No. 99-CV-3240, 2000 WL 1156857, at *4 (E.D. Pa. Aug. 8, 2000).  "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that [her] assent to that bargain is invited and will conclude it."  Restatement (Second) of Contracts § 24 (1981).

Defendants contend that the TPP was conditional, and thus not an offer for a permanent modification.  Specifically, Defendants point to the language in the August 2013 Letter which states: "You will receive a permanent modification of your account if you: a) pay each of the monthly trial period payments on time and in full, and b) sign and return the final Modification

Agreement which will be sent to you once you have completed making your required trial

payments." (Am. Compl. at Ex. C.) In support, Defendants rely on *Slimm v. Bank of Am. Corp.*,

No. CIV. 12-5846, 2013 WL 1867035 (D.N.J. May 2, 2013).

In *Slimm*, the court held that "It has been previously recognized that TPPs are explicitly

not enforceable offers for loan modifications…because TPPs serve as precursors to final loan

modifications, and therefore are largely conditional in nature." *Slimm*, 2013 WL 1867035, at

*11 (internal citations omitted). *Slimm* is distinguishable from this case. First, the holding cited

by Defendants is found in the court's promissory estoppel analysis. However, more important is

the fact that the court in *Slimm* only addressed whether the TPP was a contract requiring the

defendant to permanently modify the plaintiff's loan; it did not address whether the TPP

obligated the defendant to *offer* a loan modification agreement to the plaintiff, which they could

then accept or deny.

Insofar as Fennimore alleges that the TPP was an offer by Defendants to permanently

modify her loan, the Court agrees with Defendants that there was no such offer. Indeed, the

plain language of Fennimore's TPP shows that after she satisfied the requirements: "the Bank

will contact you and will forward your Modification Agreement to you…Once you receive your

Modification Agreement, you must return it within 30 days or the modification offer will

terminate." (Am. Compl. at Ex. C.) The TPP by its plain terms is therefore not an offer that if

accepted, would permanently modify Fennimore's loan. However, Fennimore also alleges that

the TPP obligated Defendants to offer her a modification agreement.

Defendants concede that "courts in this District have recognized certain situations in

which a TPP can be an enforceable contract–such as when the plaintiff is not claiming it entitled

her to a loan modification, only to a *decision* on a loan modification."[6]  (Defendant BOA Motion

to Dismiss ("Def. BOA Mot. Dis."), ECF No. 26, at n. 1.)  Indeed, our Court addressed that very

issue in *Cave v. Saxon Mortgage Servs., Inc.*, No. CIV.A. 11-4586, 2012 WL 1957588 (E.D. Pa.

May 30, 2012).  The TPP in *Cave*, unlike Fennimore's TPP, was issued pursuant to HAMP

guidelines.  Nonetheless, *Cave*'s holding is instructive on what exactly a TPP purports to offer, if

anything at all.  The TPP in *Cave* stated that if the plaintiffs performed under the plan and met

certain HAMP qualification criteria, the loan servicer "[would] send the borrower a permanent

modification agreement…or [would] send the borrower a written denial if they [did] not

qualify."  *Cave*, 2012 WL 1957588, at *1.  The Court held that the TPP was a contract obligating

the defendant to either offer a modification agreement, or send the plaintiffs a written denial.  *Id*.

at *5–6.

Perhaps more on point is *Lazo v. Bank of Am.*, N.A., No. C 12-00762 LB, 2012 WL

1831577 (N.D. Cal. May 18, 2012).  In *Lazo*, the court was presented with a TPP identical to

Fennimore's.  The TPP in *Lazo* stated that "[i]f you complete the trial period successfully we

will offer you a modification of your Loan."  *Lazo*, 2012 WL 1831577, at *1.  The trial period

consisted of three monthly payments, the amount being "an estimate of what your initial monthly

payment amount will be if you complete your trial period and enter into a permanent

modification agreement."  *Id*.  The court held that the TPP did not obligate the defendant to

modify plaintiff's loan.  *Id*. at *5.  However, citing the above "we will offer you" language, the

court held that the TPP obligated the defendant to offer the plaintiff a modification agreement.

*Id*. at *6.

---

[6]     During oral argument, counsel for BOA additionally conceded that as a matter of law, there was a
difference between Fennimore being promised that she would be offered a permanent modification agreement and
her being promised she would receive a modification.  (Oral Argument Transcript ("Oral Arg."), at 48:5–24.)

As in *Lazo*, the plain language of Fennimore's TPP promises that "[i]f you complete the trial period successfully we will offer you a modification of your Loan." Moreover, the August 13 Letter attached to the TPP requires Fennimore to "sign and return the final Modification Agreement which will be sent to you once you have completed making your required trial payments." (Am. Compl. at Ex. C.) Fennimore therefore sufficiently alleges that Defendants made a valid offer to send her a modification agreement.

     *ii.*    *Acceptance*

To accept an offer under a unilateral contract, the offeree has to perform in accordance with the terms of the offer. Restatement (Second) of Contracts § 45 (1981). Defendants argue that even if the TPP was an offer, the fact that Fennimore made the trial period payments "is not sufficient to establish the formation of a contract *for a permanent loan modification*." (Def. BOA Mot. Dis. at 7.) (emphasis added). Again, the Court agrees with the Defendants if that had been the only offer Fennimore alleged in her amended complaint. However, Defendants' promise was not to modify Fennimore's loan, but rather to offer her a modification agreement upon completion of the trial period.

The terms for acceptance of that offer were clearly set forth in the TPP. Fennimore was to pay a monthly sum of $209.94, due October 1, November 1, and December 1, of 2013. (Am. Compl. at Ex. C.) Fennimore made all three payments by November 1. (*Id.* ¶ 56.) The TPP further provided "[y]ou must continue making your monthly trial payments until you receive your Modification Agreement." (*Id.* at Ex. C.) Fennimore alleges she continued paying the $210.00 sum through September 2014. (*Id.* ¶ 86.) Finally, Fennimore alleges that she never received a modification agreement. (*Id.* ¶¶ 62–63, 72, 90.)

Defendants—specifically BOA—finally argue that although Fennimore made all three payments early, acceptance was not complete until the full three month period was completed. (Def. BOA Mot. Dis. at 8.)  BOA points to no language in the TPP conditioning its offer of a modification agreement on the passage of the full three months.  Moreover, the August 2013 Letter attached to the TPP unequivocally states that the modification agreement would be sent "once you have completed making your required trial payments."  (Am. Compl. at Ex. C.)  The argument that Fennimore paid too quickly and thus did not satisfactorily perform under the contract does not comport with the plain terms of the TPP and accompanying August 2013 Letter.  Fennimore has therefore sufficiently alleged that she accepted Defendants' offer to send her a loan modification agreement by successfully making the three payments under the TPP.

## B.  Indefinite Terms

Defendants also argue that the TPP lacked essential terms, and thus is not a contract. Specifically, Defendants argue that "the terms of the permanent loan modification to which Plaintiff claims she was entitled were explicitly left indefinite in the TPP, foreclosing any claim of an enforceable contract."  (Def. BOA Mot. Dis. at 8.)  Defendants cite a number of cases finding that the TPP is not a contract for a permanent loan modification because it lacks terms such as the interest rate, loan term, principal balance, and monthly payment amount.  (*See Id*. at 8–9.)

Defendants' argument is again premised on Fennimore's allegation that the TPP obligated Defendants to permanently modify her loan.  However, because Fennimore also alleges that the contract obligated Defendants to offer her a modification agreement, the question of whether the specifics of any such agreement were included in the TPP is immaterial.  The TPP

states "[i]f you complete the trial period successfully we will offer you a modification of your Loan." (Am. Compl. at Ex. C.)  Indeed, the essential terms of the TPP are clear. Fennimore had to pay three trial payments on time and in full.  (*Id.*)  In return, she would be sent a modification agreement that she would have to sign and return within 30 days or the offer would expire.  (*Id.*)  Fennimore sufficiently alleges the existence of the essential terms of a contract obligating Defendants to offer her a loan modification agreement.

## C.  Consideration

Defendants contend that the TPP is not a contract because it lacks consideration. Specifically, Defendants argue that merely making three trial payments under the plan is insufficient consideration because Fennimore was "already obligated to make payments under the terms of her preexisting loan."  (Def. BOA Mot. Dis. at 9.)  The requirement of consideration means only that there must be a bargained for exchange so that each party to the contract confers a benefit on the other or causes a detriment to himself.  *Creamer v. AIM Telephones, Inc.*, 159 B.R. 440, 443 (E.D. Pa. 1993) (citing *Cobaugh v. Klick–Lewis, Inc.*, 561 A.2d 1248, 1250 (Pa. Super. Ct. 1989)); *see also Estate of Beck*, 414 A.2d 65, 68 (1980).  Performance of a preexisting legal duty is not consideration.  *Vitow v. Robinson*, 823 A.2d 973, 977 (2003) (citing Restatement (Second) Contracts § 73).  However, "a similar performance is consideration if it differs from what was required by the duty in a way which reflects more than a pretense of bargain."  Restatement (Second) of Contracts § 73 (1981).  Additionally, "[i]t is an elementary principle that the [court] will not enter into an inquiry as to the adequacy of the consideration." *Thomas v. Thomas Flexible Coupling Co.*, 46 A.2d 212, 216 (1946); *see also Hillcrest Found. v. McFeaters*, 2 A.2d 775 (1938).

In the context of HAMP TPP agreements, courts have found various facts and circumstances to constitute sufficient consideration. *See, e.g., Wigod v. Wells Fargo Bank*, 673 F.3d 547, 564 (7th Cir. 2012) (finding that TPP at issue was supported by consideration because the borrower agreed to "open new escrow accounts, to undergo credit counseling, and to provide and vouch for the truth of her financial information"); *Cave*, 2012 WL 1957588, at *6 (finding sufficient consideration where the plaintiff agreed to undergo credit counseling if the defendant had asked for it); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 252 (D. Mass. 2011) (finding consideration where plaintiff agreed to credit counseling).  Because Fennimore's TPP is not subject to HAMP guidelines, she did not have to undergo credit counseling or provide and vouch for the truth of her financial information.  However, unlike the above cases, Fennimore was required to pay *more* than what she was otherwise legally obligated to pay per month pursuant to her original loan documents.  Before entering into the TPP, Fennimore was obligated to pay $139.04 per month.  In order to receive an offer for a modification agreement, Fennimore had to pay $209.64 per month—an increase of more than $70.  (Am. Compl. at Ex. C.) Additionally, she had to continue paying that increased amount "until [she] receive[d] [her] Modification Agreement."  (*Id.*)  Thus, Fennimore was agreeing not only to pay extra for three months, but to also pay extra until the Defendants sent her the modification agreement. Moreover, her original loan documents would remain in effect until they sent her an agreement, notwithstanding her increased payments.  (*Id.*)

Fennimore's payments "differ[ed] from what was required by [her preexisting duty] in a way which reflects more than a pretense of bargain," and she therefore has sufficiently alleged that the TPP was supported by valid consideration.  Restatement (Second) of Contracts § 73 (1981).

_D.  Statute of Frauds_

Defendants finally argue that Fennimore's breach of contract claim is barred by the Pennsylvania Statute of Frauds.  "The Statute of Frauds is satisfied by the existence of a written memorandum signed by the party to be charged and sufficiently indicating the terms of the oral agreement so that there is no serious possibility of consummating fraud by its enforcement." _Strausser v. PRAMCO, III_, 944 A.2d 761, 765 (2008) (referencing _Keil v. Good_, 356 A.2d 768 (1976)).  "In Pennsylvania, mortgages and modification[s] of mortgages are generally subject to the statute of frauds."  _Bayer v. CitiMortgage, Inc._, 2014 U.S. Dist. LEXIS 117111, *10 (M.D. Pa. Aug. 22, 2014);  _see also Linsker v. Savings of America_, 710 F. Supp. 598, 600 (E.D. Pa. 1989).  However, as noted above, the TPP is not a loan modification contract; it is merely a contract for Defendants to provide Fennimore with a modification agreement if she completes her trial period successfully.

Moreover, even if the TPP were subject to the Statute of Frauds, "[a]ny number of documents can be taken together to make out the necessary written terms of the bargain provided there is sufficient connection made out between the papers."  _Strausser_, 944 A.2d at 765.  The cover letter to the TPP contains an electronic signature from BOA employee Chnekra Jones.  The Pennsylvania Electronic Transactions Act provides that "[i]f a law requires a signature, an electronic signature satisfies the law."  73 Pa. Stat. Ann. § 2260.303 (West).  Defendants' argument that the Statute of Frauds bars Fennimore's breach of contract claim fails.

Because the Court finds that Fennimore has sufficiently alleged the existence of an enforceable contract, the Court now addresses the issue of breach.

## V.

Defendants alternatively argue that even if the TPP were a contract, Fennimore fails to allege a breach of that contract. "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'"[7] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

### A.  Breach Against Both Defendants (Count I)[8]

#### i.      Failure to Offer a Modification Agreement

Fennimore first alleges that Defendants breached the TPP by failing to offer her a modification agreement after she made the three trial payments. (Am. Compl. ¶¶ 42, 62.) Defendants contend that the TPP did not obligate them to offer a permanent modification because "before Plaintiff's second trial payment was due, Bank of America notified her that it was transferring the servicing of her loan to Nationstar, that it had provided Nationstar with all of the 'supporting documentation' associated with her trial plan, and that she should communicate with Nationstar to 'complete' the modification." (Def. BOA Mot. Dis. at 11.) Defendants contend that because the trial period was for a calendar three months, October 1st to December 1st, transferring Fennimore's loan to Nationstar on November 16th extinguished Fennimore's breach of contract claim.

---

[7]      The parties have not contested the issue of damages in their briefs, or at oral argument. The Court therefore will not address the issue.

[8]      Because the Court finds that the TPP is not a contract for a permanent loan modification, it does not address Fennimore's breach of contract arguments insofar as they allege that Defendants breached by failing to modify her loan.

In support, Defendants rely on *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677-ER-LMS, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014). In *Dumont*, the plaintiff's mortgage was transferred during the three month trial period. The court held that the original servicer could not be liable for breach of contract because it had not breached any of its contractual obligations prior to the transfer. *Dumont*, 2014 WL 815244, at *5. However, *Dumont* is distinguishable from this case. The plaintiff in *Dumont* had not completed all of their trial payments at the time their loan was transferred, and therefore had not completed all necessary requirements under the trial plan. Additionally, the plaintiff in *Dumont* ultimately received a loan modification agreement from the transferee servicer after making all required payments.

Nowhere in Fennimore's TPP does it mandate that a full ninety days must pass before a modification agreement will be sent. Indeed, the August 13 Letter attached to the TPP states that Fennimore would need to sign the modification agreement, "which will be sent to you once you have completed making your required trial payments." (Am. Compl. at Ex. C.) Thus, Defendants' argument that they did not have to send a modification agreement after she made the three trial payments contravenes the plain text of the August 13 Letter attached to the TPP. Fennimore's claim that Defendants breached the TPP by failing to offer her a modification agreement therefore survives.

ii.     *Breach of Good Faith and Fair Dealing*[9]

Fennimore also alleges that Defendants breached their duty of good faith and fair dealing by "failing to 'book,' record, or otherwise cause [her]…modification to be put into effect" and "failing to disclose to [her]…Defendants' decision to take such course of conduct." (Am.

---

[9]     Fennimore additionally alleges a breach of good faith and fair dealing solely against Nationstar (Count IV). The allegations in Count IV—in relevant part—mirror the allegations in Count I, and are therefore analyzed the same way.

Compl. ¶¶ 144–45.)  In order to properly plead a breach of the covenant of good faith and fair

dealing, "a plaintiff must properly plead the elements of a claim of breach of contract."

*Sheinman Provisions, Inc. v. Nat'l Deli LLC*, Civ. A. No. 08–453, 2008 WL 2758029, at *3

(E.D. Pa. Jul. 15, 2008).  "In other words, a plaintiff must allege facts to establish that a contract

exists or existed, including its essential terms, that defendant failed to comply with the covenant

of good faith and fair dealing *by breaching a specific duty imposed by the contract other than the*

*covenant of good faith and fair dealing*, and that resultant damages were incurred by plaintiff."

*Id*.

Fennimore's allegation that Defendants "fail[ed] to 'book,' record, or otherwise cause

[her]…modification to be put into effect" is not tied to any specific duty articulated in the alleged

contract.  (Am. Compl. ¶¶ 144–45.)  Indeed, the TPP only obligates that Defendants offer her a

modification agreement; it does not obligate them to "cause [her]…modification to be put into

effect."  (*Id*.)  Additionally, Fennimore's allegation that the Defendants "fail[ed] to disclose to

[her]…[its] decision to take such course of conduct" does not arise from a specific contractual

duty.  Nowhere in the TPP do Defendants have an independent duty to disclose to her its

decision to offer or not offer her an agreement.  Fennimore's breach of good faith and fair

dealing claim therefore fails.

## B.  Breach Against Nationstar for Initiating Foreclosure Proceedings (Count IV)

Fennimore alleges a breach of contract claim solely against Nationstar for initiating

foreclosure proceedings by sending Act 91 Notices in contravention of the TPP.  Neither party

briefed the issue of whether Nationstar's sending of the Act 91 Notices could constitute a breach

of contract.  However, as Nationstar has moved to dismiss all claims against it, the Court will analyze the issue.

Specifically, Fennimore alleges that the TPP required Nationstar to refrain from initiating foreclosure proceedings during the trial period.  (Am. Compl. ¶¶ 165–67; Am. Compl. at Ex. C.) In support, she points to the second page of the TPP which says "We will suspend any scheduled foreclosure sale or pending foreclosure proceedings on your Mortgage during the Trial Period, provided you continue to meet the obligations under this Trial Period Plan."  (*Id*. at Ex. D.) Fennimore alleges that she fulfilled all obligations under the TPP by making her trial period payments, and therefore should not have received the Act 91 Notices  (*Id*. ¶ 166.)

To the extent Nationstar could be held liable for failure to offer Fennimore a modification agreement under the TPP—*see supra* Parts III. and V(A)(i)—it could also be held liable for breach by initiating foreclosure proceedings in contravention of the express terms of the TPP.

## D.  Conclusion

Fennimore has sufficiently alleged that Defendants breached the TPP by failing to send her a modification agreement after she made the requisite trial period payments.  Additionally, Fennimore has sufficiently alleged that Nationstar breached the TPP by initiating foreclosure proceedings despite her compliance with the TPP's conditions.  However, Fennimore fails to sufficiently allege a claim for breach of good faith and fair dealing.  Accordingly, Defendants' motions to dismiss Counts I and IV are denied insofar as those Counts allege a failure to offer Fennimore a modification agreement.  Defendants' motions to dismiss Counts I and IV are granted insofar as those Counts allege a breach of good faith and fair dealing.

## VI.

As an alternative to her breach of contract claim, Fennimore alleges a promissory estoppel claim against both Defendants.[10]  The parties' arguments regarding promissory estoppel are materially the same as their breach of contract arguments.  "To maintain a promissory estoppel action a claimant must aver the following elements: '(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.'" *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. Ct. 2005) (citing *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997)).

The primary dispute between the parties is whether Fennimore took action or refrained from taking action in reliance on the promise that she would be offered a modification agreement upon completion of the trial period.  Fennimore contends that she relied on Defendants' promise by making the three trial payments under the plan.  (Am. Compl. ¶ 151.)  Additionally, Fennimore contends that "[h]ad [she]…known that Defendants would subsequently *improperly refuse to permanently modify [her] loan*[], [she] would have engaged in other efforts to save [her] home[], including alternative methods of financing that did not involve paying money to Defendants."  (*Id.*)

Fennimore's increased trial payments, along with her decision not to engage in other efforts to save her home, could constitute action in reliance on a promise.  *See, e.g., Smith v.*

---

[10]     Fennimore separately alleges a promissory estoppel claim (Count V) against Nationstar for initiating foreclosure proceedings in contravention of the TPP.  The allegations in this separate promissory estoppel claim—specifically relating to reliance—mirror the promissory estoppel allegations in Count II, and thus are analyzed the same way.

*Saxon Mortg. Servs.*, 2013 WL 1915660, *9 (E.D. Pa. May 9, 2013) (finding that paying trial

period payments and choosing to engage in the modification process constituted sufficient

detrimental reliance); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir.

2012) (finding reliance where plaintiff forewent other opportunities to save her home).

However, that action must be in reliance on a specific promise made by Defendants.  Fennimore

alleges that she would not have relied had she known Defendants would "*improperly refuse to*

*permanently modify [her] loan.*"  (Am. Compl. ¶ 151.)  As discussed above, Defendants made no

promise to permanently modify her loan.  Rather, they promised to offer her a loan modification

agreement upon completion of the trial period.  Had Fennimore alleged that she relied on

Defendants' promise that they would offer her a modification agreement, her promissory

estoppel claim would survive.  However, because she alleges she relied on a promise that was

never made, her claim fails.  Accordingly, Defendants' motions to dismiss Counts II and V are

granted.

## VII.

Fennimore also alleges a claim for unjust enrichment against Nationstar.  Specifically,

Fennimore alleges that she received Act 91 notices which assessed late fees that should have

ceased had she been offered a modification agreement.  (Am. Compl. ¶¶ 81, 83.)  To establish a

claim for unjust enrichment, Fennimore must allege: "(1) [she] conferred a benefit on the

defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the

defendant of the benefits, under the circumstances, would make it inequitable for the defendant

to retain the benefit without paying for the value of the benefit."  *Global Ground Support, LLC v.*

*Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008) (internal citations omitted).

While Fennimore alleges that she was assessed late fees, she fails to allege that she actually paid

those fees.  Indeed, Fennimore admits that she only paid the $210.00 required by the TPP.  (Am. Compl. at Ex. C.)  Fennimore thus fails to allege that she conferred a benefit on the defendant.

Additionally, "it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'"  *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (citing *Third National & Trust Company of Scranton v. Lehigh Valley Coal Company*, 44 A.2d 571, 574 (Pa. 1945)).  If the TPP was a contract, it would operate as the written instrument governing the relationship of the parties.  Even if the TPP were not a contract, Fennimore's original loan documents would govern the parties' relationship.  Either way, the doctrine of unjust enrichment is inapplicable as there is a written agreement.  Nationstar's motion to dismiss Fennimore's unjust enrichment claim is therefore granted.

**VIII.**

Fennimore also alleges that Nationstar violated the FDCPA when it sent the Act 91 notices.  To establish a violation of the FDCPA, Fennimore must show that: "(1) she is a consumer; (2) the defendant is a debt collector; (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).  The parties only dispute whether Nationstar violated a provision of the FDCPA in attempting to collect the debt.  Fennimore alleges that the Act 91 Notices violated § 1692e, which forbids the use of any false, deceptive, or misleading representation in connection

25

with the collection of a debt.[11]  *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 599 (E.D. Pa. 2014).

Specifically, Fennimore contends that an Act 91 notice is a mandatory prerequisite for initiating a foreclosure on a residential mortgage.  (Am. Compl. ¶ 74.)  She alleges that because she completed the trial period successfully, any foreclosure proceedings should have ceased pursuant to the TPP.  (*Id.* ¶ 77.)  Additionally, Fennimore claims that the Act 91 notices wrongly assessed late fees that should have been waived under the TPP.  (*Id.* ¶¶ 81–82.)  Altogether, Fennimore alleges that the initiation of foreclosure proceedings and assessment of late fees reflect five examples of violations found in subsections of § 1692e.[12]  Nationstar contends that because Fennimore never actually entered into a modification agreement, the Act 91 notices were not in violation of the FDCPA as they were specifically authorized under her original loan

---

[11]        Fennimore also alleges violations of § 1692d and § 1692f.  In regard to § 1692d, "Section 1692d of the FDCPA provides that a 'debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.'"  *Thiessen v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. CA 14-5520, 2015 WL 3643989, at *2 (E.D. Pa. June 12, 2015) (citing 15 U.S.C. § 1692d). The statute sets forth examples of harassing conduct under the provision, "including, *inter alia*, the use or threat of use of violence to harm a person or his property, the use of obscene or profane language, or repeated attempts to phone a person with intent to annoy, abuse, or harass."  *Id.*  Attempts to collect a debt "do not constitute harassment when they do not 'threaten [p]laintiff, contain any offensive language, or attempt to coerce the payment of the debt in any way.'"  *Id.* (citing *DeGeorge v. Fin. Recovery Servs., Inc.*, No. 11–04288, 2012 WL 4473229, at *3 (E.D. Pa. Sept. 28, 2012)).  Fennimore has made no allegations that Nationstar threatened her or attempted to coerce the payment of the debt.  Without more, Fennimore has not sufficiently alleged a violation of § 1692d.
        In regard to § 1692df, "Section 1692f of the FDCPA prohibits debt collectors from making use of unfair or unconscionable means to collect or attempt to collect any debt."  *Id.* (citing 15 U.S.C. § 1692f).  A complaint is insufficient under § 1692f "if it does not identify any misconduct beyond [that] which plaintiffs assert violate[s] other provisions of the FDCPA."  *Shand-Pistilli v. Prof'l Srv. Inc.*, No. 10–1808, 2010 WL 2978029, at *6 (E.D. Pa. Jul. 26, 2012) (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y.2006)).  Fennimore has alleged no unfair or unconscionable actions by Nationstar beyond the misconduct allegedly in violation of the FDCPA.  Thus, she fails to sufficiently allege a violation of § 1692f.
[12]        Fennimore alleges the following violations: "(2) The false representation of…the character, amount, or legal status of any debt; (4) The representation or implication that nonpayment of any debt will result in the…seizure, garnishment, attachment, or sale of any property…of any person unless such action is lawful and the debt collector or creditor intends to take such action; (5) The threat to take any action that cannot legally be taken or that is not intended to be taken; (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed; (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e.

documents.  (Defendant Nationstar Motion to Dismiss ("Def. Nat. Mot. Dis."), ECF No. 27, at 9.)

When determining whether the Act 91 notices were false, deceptive, or misleading, "the Court must view them 'from the perspective of the least sophisticated debtor.'"  *Burton v. Nationstar Mortgage LLC*, No. CIV.A. 14-5059, 2015 WL 1636956, at *4 (E.D. Pa. Apr. 13, 2015) (citing *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008)).  The purpose of this standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).  "However, while the least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'"  *Id*. at 454 (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-355 (3d Cir. 2000), *as amended* (Sept. 7, 2000) (internal citations omitted)).

Fennimore's claim that the Act 91 notices violate § 1692e is necessarily premised on the idea that her loan was in fact modified.  To reach this conclusion, the Court would have to assume one of two things: (1) that the TPP was a contract permanently modifying Fennimore's loan (an argument the Court has already dismissed); or (2) that had she been offered the modification agreement she was promised, Fennimore would have accepted the agreement.  In other words, to say Nationstar allegedly violated the FDCPA by sending false foreclosure notices is to say that there was a modification agreement in effect rendering those notices false.

Finding that Fennimore would have accepted any offered agreement is a leap the Court is unwilling to make.  Moreover, Fennimore specifically alleges that she "has not been sent a 'final Modification Agreement' as…promised…nor otherwise offered a permanent loan modification." (Am. Compl. ¶ 90.)  Thus, Fennimore had to have known her loan was not modified at the time the Act 91 notices were sent.  It follows that the Act 91 notices could not have been false or misleading, even under the least sophisticated debtor standard.  Accordingly, Nationstar's motion to dismiss Fennimore's FDCPA claim is granted.

**VIII.**

Counts I and IV, insofar as they allege a breach of good faith and fair dealing, are dismissed.  Counts II, III, V, VII are also dismissed.  The parts of Count I alleging that Defendants breached by failing to offer a modification agreement remain.  Additionally, the parts of Count IV alleging that Nationstar breached by wrongfully initiating foreclosure proceedings remain.

BY THE COURT

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J

28